# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MOLLY RHOADES, on behalf of Y.L.P., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. CIV-08-423-SPS |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

The claimant Molly Rhoades requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying social security benefits for her minor son Y.L.P. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that Y.L.P. was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

For persons under the age of eighteen, disability according to the Social Security Act is defined as a medically determinable physical or mental impairment that causes marked and severe functional limitations that can be expected to cause death or that have lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.906. Social security regulations prescribe a sequential three-step process

for evaluating a claim for supplemental security income benefits for a minor under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that her son is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976. Step two requires the claimant establish that her son has a severe impairment or combination of impairments. If the claimant's son is engaged in substantial gainful activity or does not have a medically determinable impairment or the impairment causes a slight abnormality or combination of slight abnormalities resulting in no more than minimal functional limitations, he is considered not disabled. At step three, the claimant's son's impairment must meet, medically equal, or functionally equal the severity of an impairment in the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A minor suffering from a listed impairment or impairments that meets or medically equals the requirements of the listing or that functionally equals the listing and meets the duration requirement will be found disabled. *See* 20 C.F.R. § 416.924(a)-(d)(2).

**Background and Procedural History**

Y.L.P. was born on August 24, 1999 and was eight years old at the time of his hearing before the ALJ. The claimant alleged that Y.L.P. has been disabled because of Charcot Marie Tooth syndrome, oppositional defiance disorder (ODD), attention deficit hyperactivity disorder (ADHD), bipolar disorder, and kidney and bladder problems since August 24, 1999, and she applied on January 23, 2006 for supplemental security income benefits for Y.L.P. under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. After the application was denied, ALJ Charles Headrick conducted an administrative hearing and determined that Y.L.P. was not disabled in a written opinion dated July 22, 2008. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step three of the sequential evaluation. He found that Y.L.P. had severe impairments of chronic gastroenteritis, ODD, and ADHD, but that these impairments did not result in marked limitations in two domains of functioning or any extreme limitation in one domain of functioning. *See* 20 C.F.R. § 416.924a(a)-(d)(2) ("If you have a severe impairment or combination of impairments that does not meet or medically equal any listing, we will decide whether it results in limitations that functionally equal the listings. By 'functionally equal the listings,' we mean that your impairment(s) must be of listing-level severity; i.e., it must result in 'marked' limitations

in two domains of functioning or an 'extreme' limitation in one domain, as explained in this section."). The ALJ therefore concluded that Y.L.P. was not disabled (Tr. 15).

## Review

The claimant's sole contention of error on appeal is that the ALJ failed to properly consider the medical opinion of Y.L.P.'s treating physician, Dr. Charles C. Lester, M.D., regarding the severity of his behavioral issues. The Court finds that the ALJ did fail to properly consider Dr. Lester's opinion, and the Commissioner's decision must therefore be reversed.

Y.L.P.'s behavioral problems are noted throughout the record. On February 11, 2004, Michael Stratton, M.D. noted that Rhoades reported that she was concerned about Y.L.P.'s behavior (Tr. 282). Specifically, Dr. Stratton noted that Y.L.P. "yells, screams, kicks, doesn't listen," is constantly in trouble at school, and is violent toward animals (Tr. 282). As a result, Y.L.P. was referred to Blue Sky Behavioral Health for an appointment with Dr. Jeannie McCance (Tr. 283). From the record, Y.L.P.'s contact with Dr. McCance was relatively limited, but March 2004 notes from Blue Sky Behavioral Health indicate that Y.L.P. had shown a propensity for cruelty to animals, a fact to which Y.L.P.'s mother testified at the administrative hearing. Those same notes reflect Y.L.P.'s impulsivity and tendency to "beat up" kids at school (Tr. 248). In April 2005, Dr. McCance noted a diagnosis of bipolar disorder and ADHD (Tr. 244). In her notes, Dr. McCance indicated that Y.L.P. had been suspended from school three times, threw rocks at kids and old ladies, and was disruptive in his kindergarten class (Tr. 244). It was

during this time also that Y.L.P. was first placed on medication for his behavioral issues (Tr. 246).

Dr. B. Todd Graybill, Ph.D. evaluated Y.L.P.'s intelligence on May 15, 2006 and noted that he was in the average range of intellectual functioning through an administration of the WISC-IV (Tr. 413-14). On May 30, 2006, state reviewing physicians Charles Delhotal, M.D. and Karen Kendall, Ph.D. determined that Y.L.P.'s impairments were severe, but that they did not meet or functionally equal any impairment in the listings. Dr. Delhotal and Dr. Kendall found that Y.L.P. had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself, and further found that Y.L.P. had no limitations in the domains of moving about and manipulating objects and health and physical well-being (Tr. 418-19). In this assessment, Y.L.P. was noted to have difficulties completing assignments, was easily distracted, and was immature in social interaction and adaptive skills (Tr. 418-19). The opinion was adopted by two additional state reviewing physicians on October 3, 2006 and September 29, 2006, respectively.

The claimant also submitted school records from Irving Elementary, where Y.L.P. attended school. Those records also reflected that towards the end of his first grade year, Y.L.P. was moved to a half-day of school because of his inability to sit still and tendency to "blurt out during instruction time" (Tr. 204). He was also noted to be "unable to get along with others in [the] classroom, talking badly to other students and cussing in the bathroom (Tr. 205). Y.L.P.'s first grade teacher also submitted a teacher questionnaire in

which she noted that Y.L.P. would act up when having difficulty with an activity or task and would engage in a range of behavior from making noises to crying as a result (Tr. 173).

The record reflects that Y.L.P. began receiving treatment from Dr. Lester at Blue Sky Behavioral Health in February 2008. Dr. Lester completed and submitted an opinion in June 2008 relating to the severity of Y.L.P.'s behavioral issues, *i.e.*, ADHD and ODD. In that opinion, Dr. Lester indicated that Y.L.P. had marked limitations in the areas of social development and function and personal and behavioral development function (Tr. 456). Dr. Lester also commented that Y.L.P. had "trouble sitting still, poor attention span, irritability, defiance, anger outbursts, [and] problems with teachers, parents, and peers [resulting from] anger issues" (Tr. 458). Dr. Lester's prior treatment notes, likewise, reflects Y.L.P.'s difficulties related to ADHD and ODD. For instance, Dr. Lester's treatment notes reflect Y.L.P.'s anger outbursts, lack of remorse, impulsivity, and aggressiveness, and Dr. Lester also noted his expectation that Y.L.P. would have "residual difficulties and need for services due to [the] severity and [chronic nature] of [his] problems/diagnosis." (Tr. 448-452). In a letter subscribed to by Dr. Lester upon review, Blue Sky counselor Kimberlee Thomas, MS-LPC noted that Y.L.P. had "significant issues related to ADHD and Oppositional Defiance Disorder."

A medical opinion from a treating physician is entitled to controlling weight if "'the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record. [I]f the

opinion is deficient in either of these respects, then it is not entitled to controlling weight.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300. Even if the opinion is not entitled to controlling weight, the ALJ is required to determine the proper weight to give it by analyzing *all* of the factors set forth in 20 C.F.R. § 416.927. *Id*. ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. Those pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and, (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so." *Id*. at 1301 [quotations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300.

The ALJ found that Y.L.P. had severe impairments, *i. e.*, gastrointestinal issues, ODD and ADHD, but that those impairments did not functionally equal any impairment in the listings. In so doing the ALJ rejected Dr, Lester's opinion that Y.L.P. had marked limitations in two domains of functioning: social development and function, and personal and behavioral development function (Tr. 456). The ALJ cited two reasons for rejecting this opinion: (i) inconsistency with other evidence of record, including Dr. Lester's own treatment notes; and, (ii) failure to indicate what objective tests Dr. Lester relied upon in rendering the opinion (Tr. 15-16). This analysis of Dr. Lester's opinion was erroneous for two reasons.

First, the reasons given by the ALJ for outright rejection of Dr. Lester's opinion as to Y.L.P.'s psychological limitations would not support even the intermediate decision not to give it controlling weight. For example, the failure to refer to specific objective tests would not by itself discredit Dr. Lester's opinion as to psychological impairments, *see, e. g., Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("[A] psychological opinion does not need to be based on 'tests;' those findings can be based on 'observed signs and symptoms.' Dr. Houston's observations of Ms. Wise do constitute specific medical findings."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004), *citing* 20 C.F.R. subpt. P, app. 1 § 12.00(B); *see also Thomas v. Barnhart*, 147 Fed. Appx. 755, 759-60 (10th Cir. 2005) ("The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements."), *citing Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996), and in any event, the ALJ should have re-

contacted Dr. Lester for an explanation before rejecting his opinion solely on that basis. *See, e. g., Ragan v. Barnhart*, 89 Fed. Appx. 160, 163 (10th Cir. 2004) ("While lack of support is a legitimate reason to deny controlling weight to a physician's opinion, the ALJ's finding of lack of supporting clinical findings triggered a duty to seek further development of the record before rejecting the opinion."), *citing Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). *See also* 20 C.F.R. § 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Further, although the ALJ could have properly refused to give controlling weight to Dr. Lester's opinion by finding it inconsistent with other medical evidence, the ALJ failed to specify the medical evidence that was inconsistent therewith. *See Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300; *Wise*, 129 Fed. Appx. at 447 ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are.").

Second, even if Dr. Lester's opinion about Y.L.P.'s psychological limitations was not entitled to controlling weight, the ALJ was nevertheless required to assess the proper

weight to give it by applying *all of the factors* in 20 C.F.R. § 416.927. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527."), *quoting Watkins,* 350 F.3d at 1300. This was important to do because the ALJ apparently favored the opinions of the state agency physicians over that of Dr. Lester without specifying the weight he was giving to any of *those* opinions, *see, e. g., Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."), *citing Goatcher v. Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995) or otherwise explaining his preference. *See Reid v. Chater,* 71 F.3d 372, 374 (10th Cir. 1995) ("A treating physician's opinion is favored over an opinion offered by a consulting physician."), *citing Talbot v. Heckler,* 814 F.2d 1456, 1463 (10th Cir. 1987). *See also Hamlin,* 365 F.3d at 1223 ("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."), *citing* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).

Because the ALJ failed to properly analyze the opinion evidence in the case, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further consideration.

**Conclusion**

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 31st day of March, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma